FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 JUL 12 PM 4: 41

CLERK
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CR606-001 |
| | ) | |
| WILLIE FREE and | ) | |
| BLAIR RHODES, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendant Willie Free has filed a motion to suppress evidence recovered during a search of the residence of co-defendant Blair Rhodes on October 30, 2005. Doc. 32. Defendant contends that he was unlawfully detained in Rhodes' apartment and that a subsequently-issued search warrant authorizing the search of the apartment was invalid because the warrant application referenced contraband found during an unlawful protective sweep of the apartment. Id. The Court held an evidentiary hearing on the motion on July 6, 2006, at which time the government offered testimony from Detective Robert Bryan and Corporal Kevin Weatherly of the Statesboro Police Department (SPD). Defendant testified

on his own behalf for the limited purpose of establishing his standing to contest the search of Rhodes' residence. For the following reasons, defendant's motion should be DENIED.

## I. BACKGROUND

Police officers were dispatched to the Apex nightclub in Statesboro, Georgia on October 29, 2005 around 11:23 p.m. to respond to a suspected counterfeit bill that had been passed at the door by a club patron. When the officers arrived, club employees pointed out the individual who had passed the counterfeit bill, Omar Mims, and his companion, defendant Free. The officers determined that the bill was indeed counterfeit and learned that Mims was the subject of an active probation warrant. Mims was then placed under arrest pursuant to that warrant, and during a search of his person incident to his arrest, the officers discovered two plastic bags containing suspected marijuana. Officer Scott of the SPD then placed Mims in the back of his patrol car. Meanwhile, Detective Bryan interviewed defendant in the parking lot of the nightclub. Defendant told him that he and Mims had driven directly to Apex from Mims' residence in Sylvania.

Defendant further stated that he did not know that Mims had used a counterfeit bill to get into the club. The officers requested consent to search defendant's vehicle and person, and defendant agreed to submit to the search. The search did not uncover any counterfeit money or other contraband. Defendant told Detective Bryan that he was going home to Sylvania.

Detective Bryan then received a call from Officer Scott, who had transported Mims to the SPD. Mims had indicated to Officer Scott that defendant Free had given him the money to pay his way into the club and that more counterfeit bills as well as drugs could be found in defendant's apartment located at 93 Stadium Walk Apartments in Statesboro. Mims had also stated that defendant would be returning to that apartment in order to destroy any evidence.

Detective Bryan then went to 93 Stadium Walk in order to investigate the information reported by Officer Scott. When he arrived at the apartment complex, Detective Bryan observed defendant's vehicle pulling into the parking lot. Detective Bryan parked his vehicle beside defendant's vehicle and walked over to speak with defendant. Detective Bryan asked

defendant why he had come to these apartments after previously stating that he was going home to Sylvania. Defendant responded that he was looking for his cousin, "Big Camp." When Detective Bryan inquired whether defendant knew anyone who lived at 93 Stadium Walk, defendant said that he did not know anyone at that address. Corporal Weatherly arrived on the scene at that time, and Detective Bryan asked him to knock on the door of Apartment 93 to see if it was occupied.

A female answered the door and Detective Bryan asked Corporal Weatherly to stand with defendant while he spoke with her. Detective Bryan introduced himself to the occupant of Apartment 93, who identified herself as Blair Rhodes. When asked if she knew the defendant, Rhodes indicated that he was her "baby's daddy." Detective Bryan explained to Rhodes that he was investigating a complaint about the passing of counterfeit money and asked if he could come inside the apartment and speak with her. Rhodes agreed. Once inside, Detective Bryan informed Rhodes of the events at the Apex night club and told her that defendant had denied that he lived at 93 Stadium Walk and further denied knowing who lived there. Rhodes stated that defendant did in fact live there. Detective

Bryan then directed Corporal Weatherly to bring defendant into the apartment.

When the officers entered the apartment shortly past midnight on October 30, 2005, they could immediately see that the doors to the bedrooms were open (although the rooms were dark) and the bathroom door was closed. Detective Bryan asked Corporal Weatherly to perform a security sweep of the apartment to ensure that there were no other individuals inside. Corporal Weatherly did not find anyone else in the apartment, but as he knelt to check for individuals under a bed, he inadvertently discovered a small amount of marijuana on the night stand in one of the bedrooms. Detective Bryan then asked Rhodes for consent to search the apartment, which she denied. Detective Bryan informed Rhodes and Free that they would be detained while he applied for a search warrant. Detective Bryan prepared an affidavit in support of his application for a search warrant, wherein he described the events at the Apex nightclub, Mims' statement to Officer Scott, and his own experiences with defendant at Apex and at 93 Stadium Walk. The affidavit also referenced the marijuana found in the apartment during the protective sweep. Based on

this affidavit, a Bulloch County magistrate judge issued a search warrant authorizing the search of Rhodes' apartment. The warrant issued approximately two hours after Detective Bryan first arrived at the apartment.

## II. ANALYSIS

The government's initial opposition to defendant's motion to suppress contests defendant's standing to challenge the constitutionality of the protective sweep of what defendant continues to characterize as "Rhodes' apartment." Doc. 40. The government points out that defendant failed to submit an affidavit supporting his motion setting forth his factual contentions as required by the Local Rules. See L.R. 12.1. The Court gave defendant an opportunity at the evidentiary hearing to offer testimony to establish his standing to assert the alleged Fourth Amendment violation. Defendant testified that he lived at his mother's home in Sylvania and did not live in Rhodes' apartment at 93 Stadium Walk. At the time of the search in question, Rhodes was pregnant with defendant's child, and defendant testified that he had a key to Rhodes' apartment and that he

would stop by the apartment to check on Rhodes and the baby from time to time. Additionally, defendant would stay overnight at Rhodes' apartment approximately two nights a week. Defendant stated that he kept a couple of pairs of pants in Rhodes' apartment but that the majority of his wardrobe was at his mother's house in Sylvania.

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). To challenge a search as violative of the Fourth Amendment, a defendant must show that he has a legitimate expectation of privacy in the area searched. Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980); Rakas, 439 U.S. at 143. "Determining whether an individual has a legitimate expectation of privacy in the object of a search requires a two-part inquiry": (1) whether the individual manifested a subjective expectation of privacy in the property searched and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as legitimate. United States v. McBean, 861 F.2d 1570, 1573 n.7 (11th Cir. 1988). The defendant always has the burden of establishing his standing to assert the Fourth Amendment exclusionary rule. Rakas, 439 U.S. at 131 n.1.; United States

7

v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984).

While defendant's testimony arguably fails to meet his burden of demonstrating that he has standing to contest the search, other evidence tends to suggest that defendant spent more time at 93 Stadium Walk than he acknowledges. Both Rhodes and Mims indicated to Detective Bryan that defendant lived at 93 Stadium Walk, and the government has made clear that it credits this information. Moreover, defendant testified that Rhodes was experiencing complications with her pregnancy, that he would go by the apartment to check on her, and that he regularly stayed overnight. The Court finds that defendant had a sufficient connection to 93 Stadium Walk to establish an expectation of privacy there, and therefore he has standing to raise the instant Fourth Amendment claims. See Minnesota v. Carter, 525 U.S. 83, 90-91 (1998) (even an overnight guest can establish a reasonable expectation of privacy in a third party's house if the individual demonstrates that he is a guest on the premises for a personal occasion, rather than strictly a commercial purpose).

Defendant essentially makes three assertions in his motion to suppress. First, defendant contends that he was unlawfully detained at

Rhodes' apartment while Detective Bryan sought a search warrant to search that apartment. Second, defendant contends that the warrantless protective sweep of the apartment violated his Fourth Amendment rights. Finally, defendant asserts that the search warrant that Detective Bryan obtained was invalid because the affidavit supporting it improperly referenced the marijuana found by Corporal Weatherly during the protective sweep of the apartment.

At the evidentiary hearing, defendant conceded that his first claim did not have any consequences for the present criminal charges and would not justify the suppression of any evidence, even if he were able to prove his claim. Defendant also conceded that his final claim, contesting the probable cause for the search warrant, is ultimately contesting the validity of the safety sweep and the reference to the marijuana found during sweep in the application for the search warrant. The sole issue for the Court to resolve, therefore, is whether the protective sweep of Rhodes' apartment violated any of defendant's constitutional rights.

While Rhodes did not give consent to the officers to conduct a search of her apartment, she initially allowed Detective Bryan to enter the

apartment, along with defendant and Corporal Weatherly, in order to discuss defendant's relationship with Rhodes and the information Bryan had received concerning the presence of counterfeit money and drugs at the apartment. Once legitimately inside Rhodes' apartment, the officers were entitled to conduct a brief inspection of the apartment for their own safety. In <u>Maryland v. Buie</u>, 494 U.S. 325 (1990), the Supreme Court held that under certain circumstances police officers may enter a dwelling, without a warrant, and conduct a "protective sweep" in order to ensure the officer's safety.[1] Under <u>Buie</u>, two types of protective sweeps are allowed:

> First, during a search incident to arrest occurring inside a home, officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Second, officers may conduct a more pervasive search when they have "articulable facts which, taken together with the rational inferences from those facts,

---

[1] While <u>Buie</u> involved an in-home arrest, the Court finds that the reasoning of <u>Buie</u> should be extended to the instant case. The protective sweep in <u>Buie</u> was justified by the unique dangers attendant to in-home arrests. For one, the arrest itself poses danger because it involves taking a person into custody for the purpose of prosecuting him for a crime. Moreover, when the arrest is effected in the home, officers are put "at the disadvantage of being on his adversary's 'turf,'" and "[a]n ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." <u>Buie</u>, 494 U.S. at 333. <u>See also</u> <u>United States v. Gould</u>, 364 F.3d 578 (5th Cir. 2004) (en banc) (holding that protective sweeps are not limited to incidents involving an arrest).

> would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

United States v. Sunkett, 95 F. Supp. 2d 1367, 1372 (N.D. Ga. 2000) (quoting Buie, 494 U.S. at 334).

In the instant case, officers entered an unfamiliar apartment after midnight to investigate claims that counterfeit currency and illegal drugs were inside the apartment. At the time Detective Bryan received consent to enter the apartment to discuss the matter, defendant had already made multiple false statements to the officers, denying that he resided at the apartment or knew anyone who lived there. Detective Bryan testified that he felt a protective sweep of the apartment was necessary for his and Corporal Weatherly's safety, given the nature of the complaint they were investigating and the surrounding circumstances, including the fact that they could not see into either of the bedrooms (which were dark) or the bathroom (the door to which was closed). Because of the potential danger posed to the officers by a person concealed in these rooms, the Court finds that Corporal Weatherly's protective sweep of Rhodes' apartment was a reasonable precautionary measure taken to ensure the safety of the officers.

Corporal Weatherly performed only a cursory scan of Rhodes' apartment, looking for other individuals and weapons in plain view, and the sweep did not last longer than a few seconds. The sweep was limited in both time and purpose and cannot be said to have been unreasonable in either respect. Thus, the protective sweep did not violate any of defendant's constitutional protections.

### III. CONCLUSION

Based on the foregoing, the Court cannot discern any violation of defendant's Fourth Amendment rights presented by the protective sweep of Rhodes' apartment. Further, the reference to the protective sweep and the marijuana found during the sweep in the search warrant affidavit was not improper and does not call into question the validity of the search warrant. Any evidence seized during the subsequent search of the residence was therefore lawfully obtained. Accordingly, defendant's motion to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this 12th day of July, 2006.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA